UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

**CARIB RESORTS, INC., a Florida corporation**

**Plaintiff,**

CASE NO.: _____

vs.

**SUTTONGATE HOLDINGS, LIMITED; and CARNIVAL CORPORATION;**

**Defendants.**
_____/

## COMPLAINT

1. This is an action for injunctive relief and for damages pursuant to 42 U.S.C. §1983 based upon the continuing violations of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution, and for damages under Florida law.

*The Parties*

2. Plaintiff CARIB RESORTS, INC. ("Plaintiff" or "CARIB") is a Florida corporation in the business of operating "shore excursions" for customers of cruise lines, including CARNIVAL as alleged in greater detail herein.

3. Plaintiff conducts no business, and has no offices, employees, or property, in the State of New York.

4. Defendant SUTTONGATE HOLDINGS LIMITED ("SUTTONGATE") is, upon information and belief, a Gibraltar corporation litigating in the courts of New York, having attorneys in New York, and instituting the garnishment proceeding which is the subject of this action from New York.

5. Defendant CARNIVAL CORPORATION ("CARNIVAL") is a Panama corporation which does business under trade names including Carnival Cruise Lines, having its principal

place of business, executive offices, account payable and accounting functions, all located in the Southern District of Florida.

### *Jurisdiction and Venue*

6. Jurisdiction exists pursuant to 28 U.S.C. §1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law.

7. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9. SUTTONGATE is subject to the jurisdiction of this court on the following grounds:
   a. Committing tortious acts in the State of Florida, including effecting the seizure of Plaintiff's Property (defined herein) located in Florida in violation of Plaintiff's due process rights. Fla. Stat. §48.193(1)(a)(2).
   b. Committing tortious acts in the State of Florida, including interfering with the contractual relationship of Plaintiff, and CARNIVAL, both headquartered in Florida, whose contract provides for application of Florida law and Florida venue for litigation. Fla. Stat. §48.193(1)(a)(2).
   c. Asserting an *in rem* interest in Property (defined below) located in this district, payable from corporate offices of CARNIVAL in Florida, to the Plaintiff also in Florida, under a contract providing for application of Florida law and Florida venue.

10. While SUTTONGATE's actions were initiated outside of Florida, it intentionally served CARNIVAL with the improper Restraining Notice, knowing that it was headquartered in Florida but also subject to New York jurisdiction, and intending that the Restraining Notice would cause CARNIVALS' Florida administrative offices to not pay a Florida debt owed to CARIB, also located in Florida, intending to cause harm, and in fact causing harm, in Florida, interfering with a Florida business relationship, effectively seizing an asset located in Florida, and depriving a Florida party of due process.

11. SUTTONGATE's actions to seize Florida Property, defame a Florida business, and to injure a Florida business are such that it should reasonably expect to be hailed into court in Florida to defend its actions.

12. CARNIVAL conducts regular and ongoing business in Florida, having its corporate headquarters at 3655 NW 87th Ave., Miami, Florida 33178.

13. Venue is proper in the Southern District of Florida in that the events and conduct complained of herein occurred in this district, and in that the parties, including SUTTONGATE, claim the right to personal property located in this district.

### *SUTTONGATE's Seizure of CARIB's Property in Florida*

14. Plaintiff and CARNIVAL have between them a contract, titled Shore Excursion Agreement, pursuant to which Plaintiff operates shore excursions such as a dolphin encounter, stingray encounter, food and beverage concessions and retail facilities, servicing customers of CARNIVAL.

15. In return for these services, CARNIVAL pays Plaintiff, and those payments account for a significant portion of Plaintiff's revenues. The contract payments from CARNIVAL to CARIB are referred to herein as "the Property".

16. CARNIVAL pays CARIB from its administrative and accounting offices in Miami, and payment is delivered to CARIB at its offices in Miami.

17. SUTTONGATE purports to hold a judgment entered in the courts of New York, against parties including a person named Samir Andrawos ("Andrawos") who is an employee of CARIB, and was formerly a 50% shareholder of CARIB.

18. Upon information and belief, in the course of investigating its judgment debtor, SUTTONGATE learned that its judgment debtor Andrawos is paid by CARIB (he receives a salary). SUTTONGATE further learned that CARIB contracts with CARNIVAL which pays CARIB.

19. In an apparent effort to coerce payment of its judgment, SUTTONGATE, through its attorneys acting as its agents in New York, issued a legal paper captioned "Restraining Notice to Garnishee" ("Restraining Notice"), which it served on CARNIVAL as garnishee, in New York.

20. A copy of the Restraining Notice is attached hereto as Exhibit "A".

21. The Restraining Notice advises CARNIVAL that judgment debtor Andrawos has some undefined "interest" in CARIB, which pays Andrawos, states that CARNIVAL owes a debt to the judgment debtor or has possession of property "*in which the debtor(s) has an interest*", and instructs CARNIVAL that it must, pursuant to New York law, restrain that property. As a result, payments that CARNIVAL would otherwise pay to CARIB under the parties' contract are restrained and denied to CARIB, to enforce a judgment against an employee of the company.

22. The effect of the restraint is ongoing, similar to a continuing writ of garnishment, for a period of a year.

23. In the event CARNIVAL disposes of the property in which SUTTONGATE alleged its judgment debtor has some interest, the Restraining Notice tells CARNIVAL that it will be liable for those sums to SUTTONGATE, and that "disobedience of this Restraining Notice is punishable as a contempt of court".

24. The result of the Retraining Notice, exactly as intended by SUTTONGATE, was that CARNIVAL has held the contractual payments then due to CARIB (at first approximately $40,000.00), and which continue to come due to CARIB as CARIB performs contractual services for CARNIVAL (now collectively in excess of $200,000.00 and growing).

25. While CARIB owes no obligation to SUTTONGATE, SUTTONGATE has been able to utilize the New York statute for restraining notices to effect a tremendous hardship on CARIB, which continues to perform services honoring its contract with CARNIVAL, but which has lost a large portion of its revenue from which to pay business expenses. This untenable situation of expenses without revenue threatens catastrophic damage to, or the complete loss of, the business, and to put over a hundred other people who rely on CARIB for income, out of their livelihoods.

26. Upon information and belief, CARNIVAL has held CARIB's payments, over CARIB's protests, under fear that if it failed to do so, it would be liable to SUTTONGATE or in contempt of the court in New York.

27. CARIB is not a party to any judicial proceeding in New York or elsewhere involving SUTTONGATE, has not been named by SUTTONGATE in the New York collection litigation, is not subject to jurisdiction in New York, was not involved in the actions underlying the judgment, and has not been adjudicated to owe any monies to SUTTONGATE.

28. SUTTONGATE issued the Restraining Notice knowing and intending that the result would be seizure of CARIB's payments, due from CARNIVAL, despite that CARIB does not owe SUTTONGATE money.

29. SUTTONGATE has no alleged, and facts to not exist, as would justify piercing the corporate veil of CARIB, that the Property is a fraudulent transfer, or any other theory of liability of CARIB to SUTTONGATE.  Even if Andrawos were still a shareholder in CARIB, corporations are not liable for the debts of their shareholders, and there is no basis pled or otherwise to ignore CARIB as a corporation and to seize its assets and destroy its business.

30. Plaintiff has demanded that SUTTONGATE release its property, but SUTTONGATE has refused, and all conditions precedent to this action, to the extent any exist, have been performed.

## COUNT I
## 42 U.S.C. §1983

31. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 30 above as if set forth fully herein.

32. Defendant SUTTONGATE and its employees and agents have, under color of statute, deprived CARIB of its constitutional right to not have its Property seized without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

33. SUTTONGATE, through its attorneys, acted under color of state law, as follows:

   a. the Restraining Notice specifically references and recites §5222 of the Civil Practice Law and Rules (CPLR) of New York, and those remedies exist within a framework of statutes for restraint and turnover of money or property of judgment debtors ultimately enforced by courts, clerks and sheriff's;

   b. CPLR §5222(a) provides that to the extent an attorney issues a restraining notice, they do so "as officer of the court", making SUTTONGATE's attorney an instrument of the state;

   c. the Retraining Notice is issued on legal case caption, under the banner of the "Supreme Court of the State of New York", stating that it is from "THE PEOPLE OF THE STATE OF NEW YORK", all evincing state action;

      d. the Retraining Notice states that it is enforceable by the contempt powers of the court, meaning that the court, sheriff and creditor must work in tandem to accomplish the objective;

      e. while a restraining order merely directs that monies or property be held indefinitely, the ultimate objective is a turnover proceeding, aided by the sheriff, to move the money or property to the possession of the judgment creditor.

34. From the standpoint of CARIB, SUTTONGATE's actions constitute a pre-judgment garnishment, without CARIB being named a party in the proceeding, without advance notice of the intended seizure, without review by a neutral officer, without even allegations of any factual basis, without any required statement being made under oath, without any adjudication of CARIB's liability, without a meaningful opportunity for a hearing, and without the protection of a bond or other security against its damages.

35. The effect of SUTTONGATE's Restraining Notice was to deprive CARIB of its Property without any semblance of due process.

36. Another effect of the Restraining Notice is that Plaintiff's Property was seized by process in a court over twelve-hundred miles away, despite that the Property, and Plaintiff itself, are both located in Florida and are beyond the territorial jurisdiction of the New York court the adjudicate.

37. If SUTTONGATE believes CARIB is liable on the debtor of Andrawos, it has the right to domesticate its judgment to Florida and enforce it through legitimate means that afford notice and due process to CARIB, and where any prejudgment remedies are appropriately secured by a bond and other due process. Instead, SUTTONGATE opted to take advantage of an unconstitutional wrinkle in New York law to seize CARIB's assets without affording it due process.

### *New York's Restraining Order Procedure in CPLR §5222 is Unconstitutional*

38. A restraining notice under New York's CPLR §5222 is not controversial where it is directed to a garnishee who owes a debt to the judgment debtor. However the statute confers an additional power on the creditor. It expressly permits a judgment creditor to specify in the paper "that the judgment debtor … has an interest in *specified property* in the possession of the [garnishee]" (emphasis added), whereupon the notice restrains that specified property despite

that it is nominally or actually owned by a third party.  CPLR §5222(b).  A copy of the statute is attached here to as Exhibit "B".

39. Once a debt or property has been *specified* in the notice, as property in which the judgment debtor has an interest, the garnishee may only dispose of that property or pay that debt "upon direction of the sheriff or pursuant to an order of the court".  *Id.*  If the garnishee disposes of the property specified, then it is in contempt of court and at risk of double liability.

40. By this device of specifying property, the creditor can capture the interests of third parties summarily, without any protection of the third parties' rights.  For example, creditors can use the retraining order to seize debts alleged to have been fraudulently transferred to third parties.  *See e.g. Plaza Hotel Assocs. v. Wellington Assocs*., 84 Misc. 2d 777 (Sup. Ct. N.Y. County 1975) (judgment creditor was not required to pursue fraudulent transfer remedies and could simply proceed under CPLR article 52).

41. The creditor's allegation of an "interest" in specific property is not required to be made under oath, is not made with any specificity, is not reviewed by a judicial officer for sufficiency, or even by the clerk's office, and is not limited to property within the jurisdictional powers of the court.

42. CPLR §5222 becomes particularly unconstitutional where it permits the seizure of property or debts owed to a non-debtor third party, and the third party and the property seized, are thousands of miles away, outside the jurisdictional reach of the New York court.

43. The seizure of third party property as authorized by CPLR §5222 is pre-judgment from the standpoint of the third party, and can be invoked even where the New York court has not taken (and may not have) jurisdiction over the third party, has not afforded the third party advance notice before seizure of its property, without a bond, and without any of the required protections afforded to parties subjected to prejudgment garnishment or attachment.  Any right to a post-seizure hearing in New York is not a "meaningful" hearing since it requires travel across the country and submission to a court that lacks jurisdiction over the party.

44. As a direct and proximate consequence of SUTTONGATE's actions, under the color of New York's CPLR §5222, Plaintiff has suffered and continues to suffer loss of its Property and other damages, and is entitled to recover its Property and compensatory damages and attorneys' fees.

45. SUTTONGATE's actions were intentional and calculated to harm a third party (Plaintiff) over whom it knew the courts of New York had no power, whose rights were never adjudicated, and who owed no money on the judgment. Such conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights. This Court should award Plaintiff punitive damages to punish and deter future similar actions by SUTTONGATE.

WHEREFORE, Plaintiff prays this court take jurisdiction over this cause, grant Plaintiff declaratory relief as to the violation of its due process rights and its entitlement to return of its Property, grant Plaintiff preliminary and permanent injunctive relief by directing SUTTONGATE to withdraw its notice and CARNIVAL to release Plaintiff's Property, and award the Plaintiff compensatory and punitive damages, attorneys' fees pursuant to 42 U.S.C. §1988, and costs all against SUTTONGATE, and for any further or additional relief the Court deems appropriate.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT

46. Plaintiff realleges and incorporations the allegations set forth in paragraphs 1 through 30 above as if set forth fully herein.

47. Plaintiff CARIB enjoys a contractual, and beneficial business relationship, with CARNIVAL.

48. At all times relevant hereto, including prior to issuance of the Restraining Order, SUTTONGATE knew of Plaintiff's relationship with CARNIVAL.

49. SUTTONGATE issued the Restraining Notice knowing that any interest its judgment creditor may have in CARIB or in payments from CARIB, would not justify making CARIB legally responsible for payment of the judgment, and would not justify seizure of CARIB's payments from CARNIVAL.

50. SUTTONGATE also knew that CARIB was located in Florida, rendering it impractical, expensive and burdensome to oppose the garnishment proceeding in New York, but proceeded

with the Restraining Notice nonetheless, to wrongfully and spitefully restrain CARIB's payments in hope of harming the interests of its judgment debtors and of CARIB.

51. Plaintiff has been damaged by SUTTONGATE's wrongful and unjustified interference with its contractual relationship.

WHEREFORE, Plaintiff prays this court take jurisdiction over this cause, award Plaintiff damages and costs against SUTTONGATE, and for any further or additional relief the Court deems appropriate.

### COUNT III
### DEFAMATION

52. Plaintiff realleges and incorporations the allegations set forth in paragraphs 1 through 30 above as if set forth fully herein.

53. SUTTONGATE's improper Restraining Notice reflects false statements regarding Plaintiff CARIB set out on its face, including that CARIB was making payments to the judgment debtor that would constitute fraudulent transfers or otherwise justify seizure of CARIB's payments, that the judgment debtor had some "interest" in the payment by CARNIVAL to CARIB, that CARIB was a mere instrumentality of the judgment debtor subject to having its corporate veil pierced, or that CARIB was otherwise engaging in bad conduct with the judgment debtor so as to justify seizure of its contractual payments from CARNIVAL.

54. The publication of these false statements in the Restraining Notice was not privileged because SUTTONGATE abused any privilege by exceeding the lawful limits of judgment enforcement.

55. SUTTONGATE knowingly made the false statements and intentionally published them to CARNIVAL, knowing and intending that CARIB would be harmed in its relationship with CARNIVAL through the false and harmful statements.

56. Plaintiff CARIB has been damaged by SUTTONGATE's false and defamatory statements.

WHEREFORE, Plaintiff prays this court take jurisdiction over this cause, grant Plaintiff judgment for damages against SUTTONGATE, and for costs, and for any further or additional relief the Court deems appropriate.

## **INJUNCTIVE RELIEF**

57. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 30 and 32 through 45 as though fully set forth herein.

58. Plaintiff is suffering immediate and compounding damage which rapidly grows larger as it continues servicing the needs CARNIVAL without compensation.

59. Defendant SUTTONGATE's actions have resulted and will result in irreparable injury to Plaintiff and Plaintiff's business is being destroyed and the over one hundred people relying on Plaintiff for their livelihood will be likewise harmed, as is Carnival if Plaintiff cannot perform.

60. There is no plain, adequate or complete remedy at law to address the wrongs described herein, in that delayed relief may come after the financial demise of Plaintiff as a business and Plaintiff cannot be compelled to cross the country and subject itself to courts which have no jurisdiction in the matter.

61. Plaintiff has communicated with SUTTONGATE by letter explaining its non-liability to SUTTONGATE and demanding that SUTTONGATE releases its hold on Plaintiff's Property, but SUTTONGATE has refused to release Plaintiff's Property because it wishes to retain its unlawful leverage on its judgment debtor by threatening destruction of his employer.

62. Unless restrained by this Court, Defendant will continue to implement its scheme of unlawful seizure until Plaintiff's business is destroyed and its value is entirely lost.

63. Defendants' acts alleged above violate established constitutional rights of Plaintiff and Defendant SUTTONGATE could not reasonably have thought that the conduct of its agents and employees in seizing and destroying Plaintiffs' Property was lawful.

64. An actual controversy exists between Plaintiff and Defendants in that Defendant SUTTONGATE, its agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiff claims that these acts are contrary to law and seeks a declaration of its rights with regard to this controversy.

65. As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiff has suffered and will continue to suffer damages through injury to its business, loss of the Property, stripping Plaintiff of the Property needed to sustain its business, and placing Plaintiff at serious and immediate risk of catastrophic loss.

WHEREFORE, Plaintiffs pray as follows:

1. For a temporary restraining order, preliminary and permanent injunction, directing CARNIVAL to release the Property, and enjoining and restraining SUTTONGATE from proceeding in New York against Plaintiff and its Florida assets;

2. For a declaratory judgment that Defendant's actions, under color of the authority of New York's CPLR §5222, as alleged herein, violate Plaintiffs' rights under the United States Constitution;

3. For damages in an amount to be determined according to proof.

4. For costs of suit and attorney fees as provided by law.

Dated and Filed: November 6, 2019

> MITRANI, RYNOR, ADAMSKY & TOLAND, P.A.
> Attorneys for Plaintiff
> 1200 Weston Road, Third Floor
> Weston, Fl., 33326
> (954) 335-1010
> jwebb@mitrani.com
> mmorhaim@mitrani.com
>
> __s/ James J. Webb_____
> By: James J. Webb, Esq.
> Florid Bar No.: 0080993